**Steve STONER, Plaintiff,**

v.

**DEPARTMENT OF AGRICULTURE, Trade and Consumer Protection, Elizabeth Kohl, and Steve Steinhoff, Defendants.**

No. 93–C–626–C.

United States District Court,
W.D. Wisconsin.

March 17, 1994.

Robert J. Gingras, Gingras Law Office, Madison, WI, for Steve Stoner.

Richard Moriarty, Asst. Atty. Gen., Madison, WI, for Dept. of Agriculture, Trade and Consumer Protection, Elizabeth Kohl, Steve Steinhoff.

OPINION AND ORDER

CRABB, Chief Judge.

In this civil action for monetary and injunctive relief, plaintiff is contending that defendants discriminated against him on the basis of his sex by failing to promote him to a new position in state government. He brings his suit under 42 U.S.C. § 1983. Defendants have moved to dismiss the complaint for lack of jurisdiction. They contend that the recent amendments to the 1991 Civil Rights Act demonstrate a congressional intent to make Title VII the exclusive remedy for claims of employment discrimination brought by public employees and that plaintiff cannot utilize Title VII because he has not exhausted the administrative remedies that are a prerequisite to bringing a Title VII suit in federal court.

The only issue before the court is whether the 1991 Civil Rights Act precludes state and local government employees from suing under § 1983. Plaintiff has not alleged a violation of Title VII and has not evinced any apparent interest in doing so, making it a moot point whether he has met the statutory prerequisites for such a suit. I conclude that nothing in the 1991 Civil Rights Act demon-

strates that Congress intended to do away with the remedies available to public employees under § 1983. Accordingly, the motion to dismiss will be denied.

Plaintiff alleges that he applied for the position of Agricultural Supervisor 2–Food, Wisconsin State Department of Agriculture; that he scored higher on the qualification exam and in the scored interview than a female who applied for the same job, but that the female was hired. For the purpose only of deciding this motion, I assume that these allegations are true and that they support a claim of discrimination based on sex.

## OPINION

Defendants admit that the 1991 Civil Rights Act contains no express statement revealing Congress's intent that the amended Title VII would occupy the field of employment discrimination and thereby preempt all claims brought under 42 U.S.C. § 1983 for discrimination in public employment, but they argue that such intent can be inferred from a review of the statute's omissions, the act's structure and the enhanced remedies added to Title VII.

■ As an initial matter, defendants argue that plaintiff must bear the burden of proving that jurisdiction exists and must establish that Congress did not intend to bar actions under § 1983 to public employees. Although it is true that a plaintiff must establish jurisdiction, defendants are arguing that long settled law in this circuit has changed. On that issue, they bear the burden of persuasion. *See, e.g., Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 521, 109 S.Ct. 1981, 1991, 104 L.Ed.2d 557 (1989) "[a] party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." *See also Wright v. Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987):

> [I]f there is a state deprivation of a "right" secured by a federal statute, § 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement.

■ The passage of a comprehensive remedial scheme may signal congressional intent to foreclose other remedies. *See, e.g., Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (elaborate provisions in Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972 authorizing enforcement suits by government officials and private citizens indicate congressional intent that such remedies would be exclusive ones for violations of these acts). However, the Supreme Court has cautioned against reliance on the existence of a comprehensive administrative scheme as the sole basis for concluding that Congress wished to preempt constitutional claims based on 42 U.S.C. § 1983:

> We do not lightly conclude that Congress intended to preclude reliance on 42 U.S.C. § 1983 as a remedy for a substantial equal protection claim. Since 1871, when it was passed by Congress, 42 U.S.C. § 1983 has stood as an independent safeguard against deprivations of federal constitutional and statutory rights.

*Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). In *Smith*, the Supreme Court concluded that the Education of the Handicapped Act preempted a constitutional claim under 42 U.S.C. § 1983. *Id.* at 1009, 104 S.Ct. at 3466–67. In reaching this conclusion, the Court reasoned that

> Both the provisions of the statute and its legislative history indicate that Congress intended handicapped children with constitutional claims to a free appropriate public education to pursue those claims through the carefully tailored administrative and judicial mechanism set out in the statute.

*Id.* In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402, (1976), the Supreme Court held that federal employees could not maintain suits under 42 U.S.C. § 1981 against the United States in light of the 1972 amendments to Title VII. Although the amendments themselves did not make express Congress's intent to "create an exclusive,

preemptive administrative and judicial scheme for the redress of federal employment discrimination," the Court derived this intent from the Senate and House Reports and the floor debates. *Id.* at 828–29, 96 S.Ct. at 1966. Both the legislative history *and* the comprehensiveness of the scheme laid out in Title VII supported the inference that Congress had intended that Title VII function as the sole remedy for intentional employment discrimination in federal employment. *Id.* at 829, 96 S.Ct. at 1966. The question of implied repeal was not significant in *Brown;* before 1972, it was highly questionable whether federal employees had any right to bring suit under § 1981. *Id.* at 825–28, 96 S.Ct. at 1964–66.

In both *Brown,* 425 U.S. 820, 96 S.Ct. 1961, and *Smith,* 468 U.S. 992, 104 S.Ct. 3457, the Supreme Court held that implied preclusion can be found only if there is some other evidence of congressional intent such as legislative history, in addition to the existence of a comprehensive scheme. The Court has stated that it is

> disinclined, in the face of congressional emphasis upon the existence and independence of the two remedies [Title VII and 42 U.S.C. § 1981], to infer any positive preference for one over the other, without a more definite expression in the legislation Congress has enacted, as for example, a proscription of an § 1981 action while an EEOC claim is pending.

*Johnson v. Railway Express Agency,* 421 U.S. 454, 461, 95 S.Ct. 1716, 1720–21, 44 L.Ed.2d 295 (1975).

The legislative history accompanying the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, expressed Congress's intent that the provisions extending equal employment opportunities to state and local employees were not to displace existing rights of action under § 1983. Although Title VII did not then contain the remedies and procedural rights that were added in the 1991 Civil Rights Act, it was considered a comprehensive remedial scheme. *Trigg v. Fort Wayne Community Schools,* 766 F.2d 299 (7th Cir.1985) (rejecting argument that merely because Title VII was a comprehensive remedial scheme, legislative history made it clear that 1972 amendments extending statute to state and local employees did not reflect congressional intent to make Title VII exclusive remedy for public employees). Defendants contend that the 1991 amendments to Title VII are significantly different from the 1972 amendments because they omit any similar expression of congressional intent to maintain existing § 1983 remedies. Defendants argue that the only basis for the result in *Trigg* (that Title VII did not extend to state employees) was the language in the legislative history of the 1972 legislation and that when such explicit language is missing, as it is from the 1991 Civil Rights Act, there is no longer any basis on which to conclude that the comprehensiveness of the scheme is not intended to make Title VII an exclusive remedy. Defendants place more weight on the omission of specific legislative history than is warranted. When Congress passed the 1991 Act, it did so against the backdrop of the 1972 Act. It had no reason to reiterate its prior position that Title VII was not intended as a replacement for § 1983.

Defendants argue the importance of two other omissions from the act. They contend that the conspicuous omission of any reference in the act to 42 U.S.C. § 1983 provides evidence of a congressional intent to allow preemption. It is true that in the act, Congress provided expressly for the preservation of 42 U.S.C. § 1981, but made no similar reference to § 1983. In a section intended to overturn the result in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), Congress provided that

> [n]othing in this section shall be considered to limit the scope of, or the relief available under, section 1977 or the Revised Statutes (42 U.S.C. § 1981).

Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1073 (1991). However, the legislative history shows that Congress was concerned only with the scope of § 1981 when it enacted this section in an effort to counteract the effects of the *Patterson* decision. The House Committee on Education and Labor reported that

> [t]he Committee finds that the Supreme Court's ruling in *Patterson* conflicts with a

substantial body of case law defining the scope of section 1981.... As a consequence, the Committee concludes that there is a compelling need for legislation to overrule the *Patterson* decision and ensure that federal law prohibits all race discrimination in all phases of the contractual relationship.

H.R.Rep. No. 102–40(I), 102nd Cong., 1st Sess., *reprinted in* 1991 U.S.C.C.A.N. 549, 630. Given the very narrow purpose underlying the adoption of the § 1981 savings clause, it is not possible to draw any clear inference from that clause about Congress's intent for § 1983 causes of action.

A second omission provides more grist for defendants' mill. They suggest that the failure to adopt proposed § 209 of H.R. 102–40(I) in the final language of the 1991 Civil Rights Act confirms that Congress did not intend to preserve other civil rights laws. As drafted, § 209 provided, in pertinent part:

> Long-standing rules of statutory construction are codified to provide that civil rights statutes should be interpreted broadly to effectuate their remedial purposes. Courts have to select the construction which most effectively advances the underlying congressional purposes of such laws, such as providing equal opportunity and effective remedies for victims of discrimination.

> Also codified is the well-established rule that in construing one federal law protecting civil rights, the courts are not to infer that other federal laws protecting civil rights have implicitly repealed or amended such laws. That same principle is applied to the amendments made by this legislation.

1991 U.S.C.C.A.N. 651. The history does not reveal why § 209 was rejected. It could be that the drafters rejected the concept expressed in the provision; it could just as easily be that the drafters thought the provision unnecessary. Congress's failure to enact this provision sheds little light on .its intent to preserve or to preclude § 1983 remedies for public employees.

Finally, defendants argue that the purpose underlying the 1991 Civil Rights Act is to provide adequate protection to the victims of discrimination and that once Congress chose to bring Title VII up to remedial parity with 42 U.S.C. § 1983 for public sector employees, § 1983 is no longer necessary. Two purposes inform the 1991 Civil Rights Act. The legislation serves as a congressional response to the Supreme Court's recent decisions by restoring civil rights protections, 1992 U.S.C.C.A.N. 556, and represents an attempt to strengthen existing remedies to provide more effective deterrence and ensure compensation equal to the harm suffered by victims of intentional discrimination. *Id.* Congress has made it clear that no single approach to the problem of employment discrimination can be a panacea. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). All of this makes it unlikely that when Congress enacted the 1991 Civil Rights Act, it intended to eliminate a constitutional cause of action that had been available for over one hundred years.

Defendants place weight on *Marrero–Rivera v. Dept. of Justice,* 800 F.Supp. 1024 (D.P.R.1992), in which the district court found that Congress had intended to make Title VII the exclusive remedy for victims of discrimination in public employment when it enhanced the remedies available under Title VII. The court reached this conclusion because it found no logical reason to believe that Congress would preserve a cause of action that allows plaintiffs to bypass Title VII now that Title VII contains all of the remedial advantages that were formerly available only under § 1983. With respect, I do not find the opinion in *Marrero–Rivera* convincing. The court did not take into account the power of the legislature to provide overlapping and duplicative remedial schemes if it chooses to do so. *See, e.g., Storey v. Board of Regents,* 600 F.Supp. 838, 839 (W.D.Wis.1985). In addition, the court does not explain why, if the comprehensiveness of the remedial scheme of Title VII was not considered sufficient to bar the use of § 1983 before the passage of the 1991 Civil Rights Act, *see, e.g., Lipsett v. University of Puerto Rico,* 864 F.2d 881, 896 (1st Cir.1988), a mere change in the remedies available under the act would bar the use of § 1983 now.

Ordinarily, in analyzing whether Congress intended a particular remedial scheme to be an exclusive remedy, it is not determinative whether the scheme provides all of the remedies it could. *See, e.g., Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (statutory remedy under Education of the Handicapped Act is a comprehensive one intended to preclude resort to other remedies although it does not include right to attorney's fees); *Middlesex County Sewerage Auth.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (comprehensive statutory schemes of pollution act and marine protection act do not include private right of action); *Brown,* 425 U.S. 820, 96 S.Ct. 1961 (Title VII is comprehensive remedial scheme for federal employees although it lacks remedies available to private employees).

As a general rule, civil rights legislation is to be construed liberally to effectuate the statute's remedial purpose. *See, e.g., Keller v. Prince George's County,* 827 F.2d 952 (4th Cir.1987) (implicit repeal of earlier civil rights statutes is problematic since such repeal would ignore the social malady Title VII was intended to help eradicate). It is a well settled canon of statutory construction that remedial statutes, such as civil rights laws, are to be broadly construed. *See* Norman J. Singer, *Sutherland, Statutory Construction,* § 60.01 (5th ed. 1992). Nothing in the purposes of the 1991 Civil Rights Act supports a finding that Congress intended to bar public employees from using 42 U.S.C. § 1983. In the absence of any evidence beyond the strengthening of an already comprehensive administrative scheme to suggest that Congress intended to preclude the use of 42 U.S.C. § 1983 for claims of discrimination in public employment, I am unwilling to read such an intent into the 1991 Civil Rights Act.

## ORDER

IT IS ORDERED that the motion to dismiss for lack of subject matter jurisdiction filed by defendants Department of Agriculture, Trade and Consumer Protection, Elizabeth Kohl and Steve Steinhoff is DENIED.