United States Court of Appeals,

Eleventh Circuit.

No. 96-4052.

Herbert JOHNSON, Plaintiff-Appellee,

v.

CITY OF FORT LAUDERDALE, a Florida municipal corporation, et al., Defendants-Appellants.

May 30, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-7240-CV-JAG), Jose A. Gonzalez, Judge.

Before COX and BARKETT, Circuit Judges, and SMITH[*], Senior Circuit Judge.

COX, Circuit Judge:

Herbert Johnson is a black male and former employee of the City of Fort Lauderdale Fire Department. In 1994, he filed a complaint against the City, a former Fire Chief, and four supervisors (in their individual capacities). Count One asserts a 42 U.S.C. § 1981 claim against the defendants for alleged racial harassment, discrimination, and retaliation. Counts Two, Three, Four, and Five assert 42 U.S.C. § 1983 claims against the defendants for alleged racial harassment, discrimination, and retaliation, in violation of Johnson's Fourteenth Amendment equal protection rights and First Amendment free speech rights. Counts Six and Seven assert 42 U.S.C. § 2000e (Title VII) claims against the City for alleged racial harassment, discrimination, and retaliation.[1] Identical facts underlie the § 1981, § 1983, and Title VII claims.

The defendants moved to dismiss the § 1983 claims, arguing that the Civil Rights Act of 1991 made Title VII the exclusive remedy for workplace discrimination, harassment, and retaliation

---

[*]Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

[1]Count Eight asserts a 42 U.S.C. § 1985 claim against the individual defendants for alleged conspiracy to violate Johnson's § 1981 and Thirteenth Amendment rights. This count is not at issue on this appeal.

by a municipality and its employees.[2]  The district court denied the motion, but granted the parties the right to immediately appeal pursuant to 28 U.S.C. § 1292(b), recognizing that its order "involve[d] controlling questions of law as to which there are substantial grounds for differences of opinion." *Johnson v. City of Fort Lauderdale,* 903 F.Supp. 1520, 1529 (S.D.Fla.1995).  We granted the defendants' subsequent petition for interlocutory review and framed the issue as "whether the Civil Rights Act of 1991 rendered [Title VII and § 1981] the exclusive remedies for employment discrimination against a municipality and its employees, thereby displacing parallel constitutional remedies under [§ 1983]."[3]  Because the district court properly concluded that the Act did not effect such a change, we affirm.

In the wake of the Civil Rights Act of 1991, several courts have faced the same issue involved in this appeal.  The Fourth Circuit and a number of district courts have rejected the argument that the Act implicitly rendered Title VII and § 1981 the exclusive remedies for public sector employment discrimination.  *See, e.g. Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994); *Stoner v. Department of Agric.,* 846 F.Supp. 738, 740-41 (W.D.Wis.1994).  The District of Puerto Rico accepted the argument.  *See Marrero-Rivera v. Dept. of Justice of the Com. of Puerto Rico,* 800 F.Supp. 1024, 1032 (D.P.R.1992).

Like the defendants in those cases, the defendants here do not argue that the Civil Rights Act of 1991 explicitly rendered Title VII and § 1981 the exclusive remedies for public sector employment discrimination.  Instead, they argue that such exclusivity is implied from (1) the Act's inclusion of a savings clause related to § 1981 and deliberate exclusion of a similar savings clause related to § 1983;  and (2) the Act's comprehensive remedial scheme.

In support of their first argument, the defendants point out that the Act includes a savings

---

[2]The defendants also moved to dismiss the § 1981 claim.  The district court granted dismissal against the City only, citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598 (1989) (holding that § 1983 is the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units).

[3]We review de novo a question of law certified by the district court pursuant to § 1292(b).  *See Jackson v. Chater,* 99 F.3d 1086, 1092 (11th Cir.1996) (reviewing de novo a question of law);  *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir.1987) (reviewing de novo a question of law certified pursuant to § 1292).

clause concerning the continuing viability of § 1981, yet omits such language related to § 1983. *See* 42 U.S.C. § 1981a(b)(4) ("Nothing ... shall be construed to limit the scope of, or the relief available under, [§] 1981...."). According to the defendants, such omission evinces congressional intent to preempt § 1983.

As the Fourth Circuit concluded in *Beardsley,* legislative history does not support this position. A House Committee Report indicates that the new provision containing the savings clause was intended to counteract the effects of *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), a decision which narrowly interpreted § 1981's scope. *See* H.R.REP. No. 102-40(I), at 89-93 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 627-30. Such concern with § 1981's scope does not establish that Congress intended to limit § 1983's scope. *Beardsley,* 30 F.3d at 527; *see also Stoner,* 846 F.Supp. at 740-41 ("Given the very narrow purpose underlying the adoption of the § 1981 savings clause, it is not possible to draw any clear inference from that clause about Congress's intent for § 1983 causes of action.").

The defendants also point out that a provision which would have specified both broad construction of civil rights laws and preservation of other civil rights statutes—including § 1983—was proposed and adopted by the House in a former version of the Act, but was not included in the Act that eventually became law. *See* 137 CONG.REC. H3924 (daily ed. June 5, 1991). According to the defendants, this omission most logically implies that "the political forces at work sacrificed duplicative constitutional claims under § 1983 in order to keep intact § 1981."

We decline to infer such a political give and take. The legislative history concerning the omission of the provision from the Act that eventually became law is ambiguous at best. Perhaps the drafters were influenced by the minority view expressed in a House Report that the provision would amend all federal civil rights laws, repeal long-standing canons of statutory interpretation, "open the gates" to a flood of litigation, and invite "uncontrolled judicial interpretations ranging far beyond the words of the statute." *See* H.R.REP. No. 102-40(I), at 158, reprinted in 1991 U.S.C.C.A.N. 687. Perhaps the drafters thought that the provision was unnecessary. *See Stoner,* 846 F.Supp. at 741. In any event, the omission "sheds little light" on Congress's intent to preserve

or preempt § 1983 remedies for municipal employees. *Id.*

The defendants rely on *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), to support their argument that the comprehensive remedial scheme for Title VII contained in the Civil Rights Act of 1991 implies § 1983 preemption. In *National Sea Clammers,* the Supreme Court concluded that the elaborate remedial provisions of the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972 indicated congressional intent to foreclose reliance on § 1983 remedies for violations of the Acts. The Court reached a similar conclusion in *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). There, the Court concluded that the comprehensive remedial structure and the legislative history of the Education of the Handicapped Act evinced congressional intent that the Act be the exclusive avenue through which a plaintiff could assert an equal protection claim related to publicly financed education; thereby preempting such an equal protection claim based on § 1983. A contrary conclusion, according to the Court, would render superfluous the Act's detailed procedural protections. *Id.* at 1011, 104 S.Ct. at 3468. The Court noted, however, that it did not "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim. Since 1871, ... § 1983 has stood as an independent safeguard against deprivations of federal constitutional ... rights.... The crucial consideration is what Congress intended." *Id.* at 1012, 104 S.Ct. at 3468 (citations omitted).

The legislative history accompanying Title VII reflects congressional intent to retain, rather than preempt, § 1983 as a parallel remedy for unconstitutional employment discrimination by municipalities and their employees. This conclusion was reached by a number of circuits prior to the Civil Rights Act of 1991, *see, e.g., Keller v. Prince George's County,* 827 F.2d 952, 958 (4th Cir.1987) (concluding that the legislative history behind Title VII as originally amended by the Equal Employment Opportunity Act of 1972 "clearly indicates" that the Act was not intended to "preempt the preexisting remedy under § 1983 for violations of the fourteenth amendment by state employers"); *Beardsley,* 30 F.3d at 527 ("This and other circuits have long recognized that prior to 1991 Congress did not intend Title VII to be the sole remedy for a public employee's claim of

employment discrimination."),[4] and nothing in the Civil Rights Act of 1991 indicates congressional intent to overrule this appellate case law. *Id.* It is "more reasonable to presume that Congress intended both avenues of relief to remain open." *Id.* (citing *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 869-70, 55 L.Ed.2d 40 (1978)); *see also Stoner,* 846 F.Supp. at 741 (questioning how a "mere change in the remedial scheme of Title VII" could change earlier case law holding that the comprehensiveness of the remedial scheme of Title VII was insufficient to bar the use of § 1983 in public sector employment discrimination cases); *Annis v. County of Westchester, N.Y.,* 36 F.3d 251, 254 (2d Cir.1994) ("[I]t is clear that Congress did not intend to make Title VII the exclusive remedy for employment discrimination claims, at least not those claims cognizable under the Constitution.").

This presumption is supported by the congressional finding accompanying the Civil Rights Act of 1991 that "additional" and "adequate" remedies were needed to deter workplace harassment and discrimination. *See* 42 U.S.C. § 1981, note (1994). As the Fourth Circuit pointed out, "[i]t would be perverse to conclude that the Congress that provided additional remedies simultaneously intended silently to extinguish the remedy that § 1983 has provided for many years." *Beardsley,* 30 F.3d at 527.

The defendants assert that if we do not infer congressional intent to preempt § 1983, municipal employees will be able to undermine Title VII's procedural safeguards by suing directly under § 1983 for unconstitutional employment discrimination. While this may be true, such a result is merely "a byproduct" of Congress's choice to make multiple remedies available. *See Keller,* 827 F.2d at 958; *see also Ratliff v. City of Milwaukee,* 795 F.2d 612, 623-24 (7th Cir.1986) (concluding

---

[4]This circuit has allowed parallel claims under both Title VII and § 1983 in public sector employment discrimination cases without specifically addressing the issue of whether Congress, before the Civil Rights Act of 1991, intended § 1983 preemption. *See, e.g., Cross v. State of Ala.,* 49 F.3d 1490, 1507 (11th Cir.1995). In those cases, we held that the elements for both the Title VII and § 1983 claims were the same. *See id.*

The defendants argue that the legislative history underlying previous amendments to Title VII is of no import, since at the time Congress passed those amendments, municipalities were thought to be immune from § 1983 liability. The defendants argue that, therefore, Congress could not have intended parallel claims against a municipality for employment discrimination under both Title VII and § 1983. This argument fails to refute the fact that Congress, in passing those amendments, did not intend to supplant § 1983 remedies with Title VII remedies.

that a plaintiff may use § 1983 to escape the comprehensive scheme of Title VII even if the same facts suggest a violation of Title VII); *Trigg v. Fort Wayne Community Schools,* 766 F.2d 299, 302 (7th Cir.1985) (same); *Annis,* 36 F.3d at 254 (reversing district court's determination that plaintiff alleging employment discrimination may not bring an action solely under § 1983, but had to also plead a violation to Title VII and follow those procedures).

For these reasons, we conclude that the Civil Rights Act of 1991 did not render Title VII and § 1981 the exclusive remedies for employment discrimination by a municipality and its employees, thereby preempting a constitutional cause of action under § 1983. Accordingly, we affirm the district court's order denying the defendants' motion to dismiss Johnson's § 1983 claims.

AFFIRMED.