Carlos VILLANUEVA, Plaintiff,

v.

CITY OF FORT PIERCE, FLORIDA;
City of Fort Pierce Police Department;
and James F. Mahar, Defendants.

No. 97–14109–CIV.

United States District Court,
S.D. Florida,
Fort Pierce Division.

Oct. 20, 1998.

Allan Gordon Cohen, Brumer & Kaufman, Miami, FL, Norman Edward Ganz, Fort Lauderdale, FL, for Plaintiff.

Richard Hunt McDuff, Johnson Anselmo Murdoch Burke & George, Fort Lauderdale, FL, for Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment (filed February 25, 1998, DE # 14). The Motion is ripe.

### I. Background

Plaintiff Carlos Villanueva is a police officer presently employed by the City of Fort Pierce Police Department. Plaintiff brings claims under 42 U.S.C. § 1981 (1998), 42 U.S.C. § 1983 (1998), Title VII of the Civil Rights Act of 1964,[1] and the Florida Civil Rights Act of 1992,[2] against Defendants City of Fort Pierce ("the City"), City of Fort

1. 42 U.S.C. §§ 2000e to 2000e–17 (1998).

2. Fla. Stat. § 760.10 (1998).

Pierce Police Department ("the Police Department"), and former Police Chief James Mahar ("Chief Mahar"). At the core of Plaintiff's claims is his belief that Defendants passed him over for promotion because of his Hispanic national origins.[3]

The City's municipal code lays out the procedures for promotions within the Police Department. Officers seeking promotion must take a promotional examination, which is periodically administered by the Police Department. Officers are then ranked on an eligibility list according to their performance on the examination. These eligibility lists are valid for one year, subject to two six-month extensions. As vacancies appear for various ranks, officers are nominated for promotion from among the top three candidates on the eligibility lists by the Police Chief, subject to approval by the City Manager. The City's code does not require that candidates be promoted strictly according to their rankings. The municipal code simply states that "[t]he Chief of Police ... will be able to pick from the top three employees on the promotional list."[4]

In 1992, Plaintiff took a promotional examination for the position of sergeant. He was ranked fifth overall. The officers scoring above Plaintiff included three white officers and one African–American officer. The top three candidates from that list ("1992 list") were promoted to sergeant, including the African–American officer. Of the remaining six officers on the list, Plaintiff was ranked second. The 1992 list was extended for two six-month periods by the City Personnel Director, and was therefore valid until January 1995.

In October 1994, then-new Chief Mahar announced that the City would be administering a new examination for sergeants three months ahead of schedule in order to administer it at the same time as the examinations for lieutenants and captains, thereby reducing administration costs. Plaintiff interpreted this announcement as a preemptive move by Chief Mahar to deny him a promotion, even though there are no provisions within the City's municipal code or in the Police Department's regulations forbidding the acceleration of promotional examinations. In November 1994, Plaintiff filed an affirmative action complaint with the City, as well as with the police officers' union, claiming that the acceleration of the examination date from January 1995 to October 1994 was in violation of the City's affirmative action policies. In response, the City postponed the scheduled examinations.

In December 1994, there was a vacant sergeant's position within the Criminal Investigation Division of the Police Department. At that time, the top-ranked candidate on the 1992 list was an Officer Spring, followed by Plaintiff and an Officer Smith. Officers Spring and Smith were white. Chief Mahar recommended Officer Smith, the third-ranked candidate, for promotion over Officer Spring and Plaintiff. According to Chief Mahar, Officer Smith was recommended for promotion over the other two higher-ranked officers because Officer Smith was best qualified for the vacant position; he had experience in the Criminal Investigation Division, a higher educational level, and a clean disciplinary record. Plaintiff did not have any experience in the Criminal Investigation Division, only having served within the Road Patrol Division, and had various negative disciplinary marks on his record. Plaintiff, however, believed that promotions were made strictly according to officers' rankings, and therefore filed a complaint with the EEOC in December 1994.

In March 1995, the City administered the examination that had originally been announced for October 1994. Plaintiff was ranked second on the new eligibility list, below an Officer Baldwin. Soon thereafter, Officer Baldwin, who was not Hispanic, was promoted to the position of sergeant.

Towards the end of 1996, Chief Mahar created the position of "Sergeant–Chaplain" for an Officer Wharton, who had been acting informally as the Police Department's chaplain, even though Officer Wharton was not on the eligibility list for sergeants. Sergeant–Chaplain Wharton was only nominally a ser-

---

**3.** Plaintiff is a native-born American citizen; his parents are of Venezuelan and Colombian national origin.

**4.** City of Fort Pierce Code § 17.1(E).

geant; he did not have any of the supervisory duties of a normal officer with the rank of sergeant. The position was apparently created to give Sergeant–Chaplain Wharton freer rein in his counseling activities as chaplain.

Plaintiff finally received his right-to-sue letter from the EEOC, and filed suit against Defendants in April 1997. The City immediately instituted a freeze on promotions while it searched for a new Police Chief. A new Police Chief was hired in 1997; Plaintiff was promoted to the position of sergeant soon thereafter.

## II. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury*, 25 F.3d 1551 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* 398 U.S. at 157, 90 S.Ct. 1598.

However, the non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment "must do more than sim-

ply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact,

the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## III. Discussion

While Plaintiff's Complaint is not entirely clear, it appears that Plaintiff is seeking relief under Title VII, Section 1981, Section 1983, and FCRA against Defendant City, Defendant Police Department, and Defendant Chief Mahar in his official capacity, and under Section 1981 and 1983 against Defendant Chief Mahar in his individual capacity. In addition, Plaintiff advances claims for failure to promote, harassment, disparate treatment, hostile environment, and retaliation under each of these statutory sources.

### A. Claims as to Defendant Police Department

Plaintiff has stipulated to a dismissal of his claims against Defendant Police Department.[5]

### B. Claims as to Defendant City of Fort Pierce and Defendant Chief Mahar in his Official Capacity

#### (1) Section 1981 and Section 1983 Claims

As an initial matter, Plaintiff's § 1981 claims are merged into Plaintiff's § 1983 claims because a plaintiff may not bring both § 1981 and § 1983 claims against a municipality. In *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct.

---

5. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 13.

2702, 105 L.Ed.2d 598 (1989), the Supreme Court held that § 1983 constitutes the exclusive federal remedy against state actors for violations of the rights contained in § 1981. *Id.* 491 U.S. at 736, 109 S.Ct. 2702. The Eleventh Circuit expressly adopted this rule. *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991). Amendments made to § 1981 by the Civil Rights Act of 1991 ("CRA")[6] have created some confusion among the circuits as to whether the CRA overruled the *Jett* rule against simultaneous § 1981 and § 1983 claims.[7] However, while the Eleventh Circuit has not expressly addressed whether the CRA has altered the original *Jett* analysis, district courts within the Eleventh Circuit, including the Southern District of Florida, have been unanimous in holding that the *Jett* rule remains unaltered, and a plaintiff may not bring § 1981 and § 1983 claims simultaneously against a municipal defendant.[8] Therefore, the § 1981 claims are merged into, and analyzed under, Plaintiff's § 1983 claims.[9]

A plaintiff may bring a claim under § 1983 against a municipal defendant for deprivations of a federal right made pursuant to official policy, practice, or custom.[10] However, a plaintiff cannot simply allege that such an official policy exists. He must show that the course of action was "consciously chosen,"[11] or "officially sanctioned or ordered."[12] In the instant case, there is no evidence that the City as an entity promulgated any discriminatory policies or customs at the municipal level. With respect to promotional decisions, Article 17 of the City Code lays out a neutral, meritocratic process for promotions, based on performance on competitive examinations. Plaintiff has not introduced any evidence to show that the City at any time adopted promotion procedures that were, on their face, discriminatory. Therefore the instant case is not one in which the City can be held directly liable.[13]

Plaintiff's allegations focus instead on the actions of Chief Mahar, and the liability that may be imputed to the City through the conduct of Chief Mahar as a municipal officer. However, there is no respondeat superior liability under § 1983; a plaintiff can only sue a municipality under § 1983 for the actions of an officer to the extent that the violations result from official custom or poli-

---

**6.** Pub.L. 102–166, 105 Stat. 1071 (1991).

**7.** *See, e.g., Dennis v. County of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir.1995) (holding that the 1991 amendments do not affect the *Jett* rule). *But see Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir.1996) (holding that the 1991 amendments to § 1981 now permit simultaneous § 1981 and § 1983 claims against state actors).

**8.** *See, e.g., Johnson v. City of Fort Lauderdale*, 903 F.Supp. 1520, 1523 (S.D.Fla.1995) ("[T]he only means for Plaintiff to seek redress from the [municipal defendant] for its violation of his § 1981 rights is to maintain an action under 42 U.S.C. § 1983."), *aff'd on other grounds, Johnson v. City of Fort Lauderdale*, 148 F.3d 1228 (11th Cir. 1998); *Godby v. Montgomery County Bd. of Educ.*, 996 F.Supp. 1390, 1411 (M.D.Ala.1998); *Reynolds v. Glynn County Bd. of Educ.*, 968 F.Supp. 696, 707 (S.D.Ga.1996); *Hicks v. Lewis*, No. 95–218–CIV–T–1 7A, 1996 WL 172994 at *2 (M.D.Fla. April 5, 1996); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 905 F.Supp. 993, 994–95 & n. 2 (N.D.Ala.1995); *Crenshaw v. City of Defuniak Springs*, 891 F.Supp. 1548, 1555 (N.D.Fla. 1995); *Garrett v. Clarke County Bd. of Educ.*, 857 F.Supp. 949, 953 (S.D.Ala.1994).

The Eleventh Circuit has, at least tacitly, approved of this interpretation of the 1991 amendments to § 1981. In *Johnson*, 148 F.3d 1228, the court noted without negative comment the district court's finding that § 1983 is the exclusive remedy for violations of § 1981 rights. *Id.* 148 F.3d at 1229 n. 2.

**9.** *See Busby v. City of Orlando*, 931 F.2d 764, 771–72 n. 6 (11th Cir.1991) (finding that section 1981 claims are "effectively merged into the section 1983 claim").

**10.** *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Circa Ltd. v. City of Miami*, 79 F.3d 1057, 1060 (11th Cir. 1996).

**11.** *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

**12.** *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion).

**13.** *Compare, e.g., Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (city council fired plaintiff by resolution); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (city council revokes license).

cy.[14] In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion), the Supreme Court held that a municipal officer's actions may only be attributed to official policy where the local official is a "decisionmaker [who] possesses final authority to establish municipal policy." *Id.* 475 U.S. at 481, 106 S.Ct. 1292. The mere fact that an official has discretion in the exercise of particular functions does not give rise to municipal liability—he must actually be a "final policymaker." *Id.* 475 U.S. at 481–82, 106 S.Ct. 1292.[15]

In *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion), the Supreme Court held that the question of whether a local official is a "final policymaker" is one of state law, and it is a question of law for the district court to determine. *Id.* 485 U.S. at 124, 108 S.Ct. 915.[16] In addition, in analyzing whether an official is a final policymaker, the courts are to look to, *inter alia*, whether the official is vested with finality of authority in his decisions.[17] The Eleventh Circuit has noted on numerous occasions that a municipal official is not a final policymaker if those decisions are subject to meaningful review.[18]

Defendants have introduced substantial evidence to show that Chief Mahar was not a "final policymaker," and therefore any acts of discrimination that may have occurred are not attributable to official policy. Under the City Code, promotion procedures are formu-

lated by the City.[19] Chief Mahar was merely an applier of a promotion process promulgated by the City. The only reference to the chief of police is his discretionary authority to "pick from the top three employees on the promotional list." [20] The Police Chief's nominations are subject to review by the City Manager.[21]

In response, Plaintiff misdirects his argument towards whether discriminatory acts occurred at all, which is a wholly separate and distinct question from whether such acts were committed by Chief Mahar as a final policymaker. The Court finds, as a question of law, that Chief Mahar was not a final policymaker for the purpose of determining whether discriminatory acts occurred as a result of official custom or policy. For this reason, summary judgment is granted as to Plaintiff's § 1983, and by inclusion § 1981, claims against the City.

*(2) Title VII Claims*

 Plaintiff can bring Title VII claims against a state actor in addition to § 1983 claims,[22] either by suing the employer directly or by naming supervisory employees as agents of the employer.[23] Under Title VII, it is unlawful for an employer to discriminate against an employee on the basis of national origin.[24] There are a variety of types of Title VII claims that a plaintiff may bring. Plaintiff here seeks to bring separate Title VII claims for failure to promote, harassment,

---

14. *See Monell*, 436 U.S. at 691, 98 S.Ct. 2018.

15. As the Court noted, "the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy." *Pembaur*, 475 U.S. at 483 n. 12, 106 S.Ct. 1292.

16. *See also Owens v. Fulton County*, 877 F.2d 947, 950 (11th Cir.1989).

17. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915; *McMillian v. Johnson*, 88 F.3d 1573, 1579 (11th Cir.1996).

18. *See, e.g., Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir.1997) (police chief not a final policymaker because his decision was subject to review); *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir.1997) (city manager not a final policymaker because his decision was subject to "meaningful administrative review");

*Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) (city police chief was not a final policymaker because his employment decisions could be reversed by the city manager); *Martinez v. City of Opa–Locka*, 971 F.2d 708, 713–15 (11th Cir.1992).

19. "The CITY shall conduct the competitive examinations procedure and establish eligibility lists." City of Fort Pierce Code § 17.1(C).

20. City of Fort Pierce Code § 17.1(E).

21. *See* City of Fort Pierce Charter § 48(b).

22. *See Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1231 (11th Cir.1998).

23. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991).

24. *See* 42 U.S.C. § 2000e–2 (1998).

disparate treatment, hostile environment, and retaliation. As an initial matter, the Court notes that Plaintiff has failed to allege facts, much less offer evidence, supporting his claims for harassment or hostile environment. There is no evidence that Plaintiff was subjected to the type of "working environment[ ] so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers,"[25] which is the usual formula for presenting a claim for harassment or hostile environment. Therefore, the Court holds that Plaintiff's Title VII hostile environment and harassment claims are without foundation and dismissed. In addition, the Court notes that Plaintiff's failure to promote claim effectively collapses into the disparate treatment claim, and is treated within that analysis, *infra*.

#### (i) Title VII Disparate Treatment Claim

 Where there is no direct evidence of discriminatory intent, Title VII disparate treatment claims undergo a three-part treatment. First, a plaintiff bears the burden of establishing a prima facie case, i.e., the establishment of a legally mandatory, rebuttable presumption, rather than simply putting forth enough evidence to permit a trier of fact to infer the fact at issue.[26] This generally involves meeting the four-part test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a prima-facie case under *McDonnell Douglas*, a plaintiff must show that (i) he is a member of protected minority; (ii) he

was qualified; (iii) he was rejected despite being qualified; and (iv) the position remained open and the defendant sought other applicants.[27] The burden then shifts to the defendant to produce a legitimate, nondiscriminatory explanation for the adverse action.[28] If defendant can do so, the burden then shifts back to the plaintiff to rebut defendant's explanations;[29] ultimately, the plaintiff bears the burden of carrying his case.[30]

There are genuine issues of material fact as to whether Plaintiff is able to establish a prima facie Title VII disparate treatment case, and therefore it would be inappropriate to grant summary judgment on that account.[31] In response to the prima facie case, Defendants offer legitimate, nondiscriminatory explanations as to why Plaintiff was not promoted to sergeant. Plaintiff fails to address those explanations. For that reason, summary judgment must be granted as to Plaintiff's disparate treatment claim.

 From Plaintiff's allegations, the Court is able to identify three alleged instances of disparate treatment: (1) when Chief Mahar accelerated the 1994 promotional examination, (2) when Plaintiff was passed over in favor of Officer Smith in 1994, and (3) when Officer Wharton became "Sergeant–Chaplain" in 1996. With regard to the promotional examination, Plaintiff believes that the examination was accelerated in order to avoid having to promote him. Defendants argue, in response, that the examination was accelerated in order to reduce costs by administering examinations for different ranks

---

**25.** *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

**26.** *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir.1997).

**27.** *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n. 11 (11th Cir.1997).

**28.** *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Evans*, 131 F.3d at 963.

**29.** *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Evans*, 131 F.3d at 964–65.

**30.** *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Evans*, 131 F.3d at 963.

**31.** It is undisputed that Plaintiff is Hispanic, a protected minority under Title VII, that Plaintiff was passed over for promotion, and that Defendants sought and promoted other officers over Plaintiff. There is disagreement as to whether Plaintiff was qualified for the position of sergeant, but enough evidence has been presented to at least create a genuine issue of material fact as to that question. Defendants argue that Plaintiff was not as qualified for the position of sergeant as Officer Smith, who was promoted above Plaintiff in 1994, and was also not qualified to serve as chaplain, in the case of Officer Wharton. However, Plaintiff was, at various times, ranked within the top three officers on the eligibility lists.

simultaneously. In addition, as Defendants note, there is nothing in the City's Code that forbids the Police Department from administering an examination before the prior list has expired. The Code merely sets out the maximum validity periods for the list. Arguably, an egregiously premature rescheduling of examinations could manifest a discriminatory practice. However, the fact that a new examination was announced a mere three months before the prior list was to expire hardly seems outrageous enough so as to constitute discrimination. Plaintiff does not advance any arguments or evidence to dispute Defendants' explanation for why the examination was accelerated, other than to reiterate his conclusory allegation that it was based on discriminatory intent.

Plaintiff also interprets Defendants' promotion of Officer Smith over himself as an instance of disparate treatment. In response, Defendants have stated that Plaintiff was passed over for promotion in favor of Officer Smith because Officer Smith had superior experience in the Criminal Investigation Division, Officer Smith had more education, and Plaintiff had numerous negative disciplinary marks on his record. Plaintiff's prima facie case of discrimination against Chief Mahar is further discredited by the fact that it was Chief Mahar who, as a Lieutenant, interviewed and recommended Plaintiff for hiring in 1988. In addition, as Road Patrol Captain, Chief Mahar recommended Plaintiff for promotion to acting sergeant. In response, Plaintiff does not offer any evidence to rebut Defendants' nondiscriminatory explanations for its actions.[32]

Finally, Plaintiff believes that the creation of the "Sergeant–Chaplain" position was an attempt to avoid promoting him by creating a position that explicitly disqualified him. In response, Defendants have stated that it was merely a reclassification of Chaplain Wharton's rank, that the reclassification had no effect on the existing promotional list, and that as Sergeant–Chaplain, Officer Wharton had none of the supervisory responsibilities of a real sergeant. Aside from his own testimony, Plaintiff offers no evidence to the contrary, i.e., that the Sergeant–Chaplain position was in reality a bona fide sergeant position.

Defendants' nondiscriminatory explanations effectively undercut Plaintiff's prima facie case. As the Supreme Court has observed, "[a] satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence."[33] Of course, Plaintiff could reestablish the validity of his prima facie case, at least to survive summary judgment, if there was evidence in the prima facie case itself that rebutted Defendants' explanations,[34] or if Plaintiff presented some additional evidence to dispute the explanations.[35] However, there is nothing in either the Plaintiff's prima facie case or in any additional evidence to show that Defendants' explanations are pretextual. Plaintiff merely reiterates his initial conclusory allegations of discrimination, arguing that the allegations themselves prove pretext—which they do not. Therefore, this Court finds that there is no genuine issue of material fact as to Plaintiff's Title VII disparate treatment claim.[36]

**32.** Plaintiff repeatedly cites, as an example of Chief Mahar's discriminatory intent, Chief Mahar's statement at an interview regarding Plaintiff's affirmative action complaint that "[he] would never promote that man [Villanueva]." While the statement suggests that Chief Mahar may have harbored some animus towards Plaintiff, there is no evidence that the animus was based on Plaintiff's national origins. Indeed, there is no allegation, much less evidence, that Plaintiff encountered any type of discriminatory treatment, other than the alleged failure to promote.

**33.** *Burdine,* 450 U.S. at 255–56 n. 10, 101 S.Ct. 1089.

**34.** *See id.* ("[W]e do not imply that the trier of fact no longer may not consider evidence previ-

ously introduced by the plaintiff to establish a prima facie case.").

**35.** *See Evans,* 131 F.3d at 964–65 ("Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employers' legitimate, nondiscriminatory reasons.").

**36.** It appears from Plaintiff's Complaint that he is also alleging, albeit implicitly, a Title VII disparate impact claim, i.e., that a facially neutral promotional scheme "in fact falls more harshly on one group than another." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Plaintiff alleges, for example, that there are no

### (ii) Title VII Retaliation Claim

 Title VII retaliation claims undergo an analysis similar to the one for disparate treatment claims. A plaintiff must establish a prima facie case; he must show that (1) he was engaged in a protected activity; (2) there was an adverse employment action; and (3) there was a causal connection between the protected activity and the resultant adverse action. *Little v. United Technologies,* 103 F.3d 956, 959–60 (11th Cir. 1997). Once plaintiff has done so, the burden shifts to the defendant to show that there was a nonretaliatory motive for the adverse action. *Rollins v. State of Fla. Dept. of Law Enforcement,* 868 F.2d 397, 399 n. 4 (11th Cir.1989). The burden then shifts once more to the plaintiff to show that the defendant's explanation is pretextual. *Id.*

The Court identifies two alleged instances of retaliation: (1) that Officer Smith was promoted over Plaintiff because Plaintiff filed an affirmative action complaint with the City and the police union, and (2) that the "Sergeant–Chaplain" position was created for Officer Wharton after Plaintiff filed his EEOC complaint. As with Plaintiff's disparate treatment claim, there are genuine issues of material fact regarding Plaintiff's prima facie case for retaliation.[37] However, as discussed *supra* with the disparate treatment claim, Plaintiff fails to rebut Defendants' legitimate, nondiscriminatory explanations for why Officer Smith was promoted over Plaintiff, or why the Police Department created the "Sergeant–Chaplain" position. For this reason, there is no genuine issue of material fact concerning Plaintiff's Title VII retaliation claim, and summary judgment must be granted.

### (3) Florida Civil Rights Act

Plaintiff also brings claims against Defendant City under Florida's Civil Rights Act, Fla. Stat. § 760.10 (1998) ("FCRA"). The Eleventh Circuit has held that "decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998).[38] The Court finds that the arguments that mandate granting summary judgment as to Plaintiff's Title VII claims also apply to Plaintiff's FCRA claims, and therefore summary judgment is also granted against Plaintiff's claims under FCRA.

### C. Claims as to Defendant Chief Mahar in his Individual Capacity

 Plaintiff seeks to bring claims under § 1981 and § 1983 against Chief Mahar in his individual capacity. Municipal officials performing discretionary functions enjoy qualified immunity from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1555 (11th Cir.1993) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In showing that the law is clearly established, a plaintiff cannot rely on "general, conclusory allegations or broad legal truisms . . . . the burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Id.* 7 F.3d at 1557 (citations omitted). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (citation omitted).

---

Hispanic supervisors in the Police Department. However, Plaintiff fails to provide a numerical context within which to weigh that fact. Aside from Plaintiff himself, Plaintiff can offer no statistical evidence that could raise the inference of discriminatory ɪmpact against any particular minority group. Plaintiff does not discuss, for example, how many Hispanic officers are in the Police Department, how many take the promotional examination and are qualified to be promoted, and how their failure rates compare to comparable figures for white officers. It is not enough to merely allege that there are no

minority supervisors. As the Eleventh Circuit has previously noted, "[s]tatistics without an analytical foundation are virtually meaningless." *Evans,* 131 F.3d at 963.

**37.** The filing of these complaints may constitute statutorily protected activities. There may or may not be a causal connection between these actions and the alleged passing over for promotion.

**38.** *See also Byrd v. Richardson–Greenshields Securities, Inc.,* 552 So.2d 1099, 1102 (Fla.1989).

The Court finds that Chief Mahar is insulated from Plaintiff's § 1981 and § 1983 claims by qualified immunity. In the present case, Chief Mahar is eligible for qualified immunity because he was a municipal official who exercised discretion in the promotion of officers under his command. Applying an objective standard of reasonableness, Chief Mahar could not have known that it was unlawful: (1) to accelerate a promotional examination to reduce administration costs, where the examination was only moved up by three months and there was no prohibition against such action; (2) to promote a white officer over a Hispanic officer on the basis of greater experience and a cleaner disciplinary record; and (3) to create a special position in order to give the chaplain greater freedom in carrying out his duties. In attempting to pierce Chief Mahar's defense of immunity, Plaintiff does not discuss any specific case law regarding the factual circumstances of his case. Plaintiff merely makes the generalized allegation that Chief Mahar violated "plaintiffs' [sic] 'right' to be free of racial discrimination in the course of employment." [39] This is precisely the type of "conclusory allegation[ ] or broad legal truism[ ]" that the Eleventh Circuit disapproves of.[40] Because Plaintiff has failed to show that there is a genuine issue of material fact regarding the applicability of qualified immunity to Chief Mahar, the Court grants summary judgment as to Plaintiff's § 1981 and § 1983 claims against Chief Mahar in his individual capacity.

## IV. Conclusion

Based on the foregoing, it is ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (filed February 25, 1998, DE # 14) be, and the same is hereby, GRANTED.

---

39. Pl.'s Resp. to Defs.' Mot. for Summ. J. at 12.

40. *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993) (citations omitted).