United States Court of Appeals,

Eleventh Circuit.

No. 94-8258.

Gordon HAYGOOD, Judy Haygood, Plaintiffs-Appellees,

v.

Randall JOHNSON, in his individual and official capacity as
Sheriff of Fayette County, Georgia, Mike Pruitt, Lt., in his
individual and official capacity as a law enforcement officer with
the Fayette County Sheriff's Department, Scott Savage, in his
individual and official capacity as a law enforcement officer with
the Fayette County Sheriff's Department, Defendants-Third-Party
Plaintiffs, Appellants,

Fayette County, Defendant-Appellant,

Henry Allen Thurston, Third-Party Defendant.

Dec. 4, 1995.

Appeal from the United States District Court for the Northern
District of Georgia. (No. 3:92-CV-123-GET), G. Ernest Tidwell,
Judge.

Before EDMONDSON and COX, Circuit Judges, and FAY, Senior Circuit
Judge.

PER CURIAM:

This case involves several claims brought by Gordon and Judy
Haygood pursuant to 42 U.S.C. § 1983, seeking damages arising from
a search allegedly conducted in violation of the Fourth and
Fourteenth Amendments. Appellant-defendants appeal from adverse
rulings on summary judgment motions.

Defendant Savage argues that he was erroneously denied summary
judgment. His motion was based on qualified immunity to the
plaintiffs' claim that he caused an illegal search to occur by
intentionally or recklessly omitting material facts from an
application for a search warrant. Defendants City of Tyrone and
Fayette County argue that they were entitled to summary judgment on

the plaintiffs' section 1983 municipal liability claims against them, which arose from the same search.  We hold that Savage is entitled to qualified immunity, but refrain from addressing the municipal liability claims:  we lack jurisdiction.

I.

In April 1992, Corporal Scott Savage was on duty at the Fayette County Sheriff's Department Task Force.  He received a call from a man who informed him that Gordon Haygood—now plaintiff in this case—was selling cocaine.  The caller identified himself as "Larry Sims."  Savage ran a criminal history check on Sims and found nothing.  Savage's supervisor ordered a "controlled buy," using Sims as the decoy, to corroborate Sims' story.

Before the controlled buy, Sims was searched to make sure he took into the buy no drugs, money, weapons, and so on.  He then called plaintiff Haygood and arranged a meeting at a convenience store nearby.  Sims went into the meeting wearing a small tape recorder and in possession of $200 that had been given to him by the police.  Agents observed Gordon Haygood arrive, park by the gas pumps, and meet with the informant in the store.  Plaintiff and the informant then got into Plaintiff's van, drove around to the darkened side of the building, and sat with the lights off for two minutes.  The informant left the van and walked straight to the officers' vehicle, where he presented a small bag of white powder.  This bag was later determined (before filing the warrant affidavit) to contain five grams of powder, instead of the 3.5 that the agents

expected the $200 to buy.[1]

After the buy, the officers realized that the tape recorder either had been shut off or malfunctioned. They also realized, as "Sims" filled out paperwork, that he carried papers identifying him as Henry Hurston. The informant admitted to the officers that Hurston was his real name; he claimed he had lied because he was frightened that the police would reveal his name to drug dealers who would seek retribution. Had the officers run a second criminal history check at this time, they would have discovered that Hurston had been arrested and convicted several times for engaging police in fraudulent "controlled buys."[2]

After the controlled buy, Savage filed an affidavit requesting a warrant to search Plaintiff's residence. In the application, Savage asked for and received a "no-knock" provision based on his assertion that drugs can be easily disposed. In the affidavit, he omitted that Hurston had used an alias, that the tape recorder failed, and that the amount of the white powder (which had not yet been tested) was more than the money allotted was expected to have bought. A warrant was issued.

Having received the warrant, Fayette County officers used a battering ram to go through the plaintiff's front door at about

---

[1]Savage stated during his deposition that a laboratory test done after the filing of the warrant affidavit showed the substance not to be cocaine.

[2]In this instance, Plaintiff Haygood alleges that Hurston had contacted him earlier to ask if he would be interested in buying a couch from Aaron Rental, for whom Hurston claimed to work; that Haygood chose the couch, which Hurston agreed to deliver; and that on the night of the controlled buy, Hurston called Haygood to say the couch was at the convenience store.

11:00 p.m.  Plaintiff and his family were detained in nightclothes while the search of the house and a car took place.  The search turned up no evidence of drugs, nor the two $100 bills that Hurston was to have used to buy the drugs.

Plaintiffs filed this action under 42 U.S.C. § 1983, bringing state law claims as well.  The district court held that there was no probable cause to search and that Savage was unentitled to summary judgment based on qualified immunity.  For defendants Pruitt and Johnson (Fayette County police officers sued in their official and personal capacities) the district court granted them summary judgment in their individual capacities based on qualified immunity.  The district court refused to grant summary judgment to Fayette County and the City of Tyrone on the plaintiffs' municipal liability claims.  The district court dismissed Plaintiffs' state law claims.  Savage appeals the denial of qualified immunity;  the local governments appeal the denial of summary judgment on Plaintiffs' claims against them under section 1983.

II.

We review the denial of summary judgment to determine whether Savage's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  The question is one of law, and our review is *de novo.  Elder v. Holloway,* --- U.S. ----, ----, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994).

The district court held that the facts omitted from the warrant by defendant Savage negated probable cause and that a

reasonable officer in Savage's position would have known of the clearly established law forbidding the omission of material facts from a warrant application. Based on these conclusions, the district court determined that Savage caused an illegal search in violation of clearly established law and was, therefore, entitled to no immunity.

The reasoning underlying the district court's holding contravenes that of *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146 (11th Cir.1994) (en banc).[3] There, we stressed that denial of qualified immunity should occur only when the actual conduct in which the defendant was alleged to have engaged violated clearly established federal law. *Lassiter,* 28 F.3d at 1149-50 (qualified immunity unavailable only if all reasonable government agents in same situation would know that act "violates federal law *in the circumstances* "). Here, the district court concluded that clearly established law holds that a search is invalid when facts deliberately omitted from the warrant would have negated probable cause. We accept this reading of Supreme Court and Eleventh Circuit precedent for motions to suppress. *E.g., West Point-Pepperell, Inc. v. Donovan,* 689 F.2d 950, 960 (11th Cir.1982); *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980). But, it does not end the analysis in this civil action.

The district court never concluded that what Savage specifically did violated clearly established law. In reality,

---

[3]*Lassiter* approved no new rules, but did attempt to restate and to clarify the principles of qualified immunity. The district court's decision in this case predates our *Lassiter* decision.

probable cause is not a precise concept.  The district court did not conclude (nor could it rightly have) that Plaintiff met the burden of showing that, *in the light of pre-existing law,* the facts omitted *in this case* were clearly material (that is, that the facts omitted clearly would have negated probable cause if those facts had been included).  We, looking at the pre-existing law, hold that the facts omitted here were not so clearly material that every reasonable law officer would have known that their omission would lead to a search in violation of federal law.

Savage omitted from his warrant application that Hurston had used an alias, that the tape recorder had shut off, and that the quantity of cocaine allegedly purchased exceeded the expected quantity by about fifty percent.  Savage points out that these facts, taken individually, have rational explanations and do not mean much.  Informants commonly use aliases when dealing with the police, tape recorders frequently malfunction, and variations in quantity occur in drug sales (and are difficult to identify by sight when they do).  Thus, none of these facts was sufficient in itself to cast the kind of doubt on the credibility of the informer that would overcome the qualified immunity defense.

More important, however, we conclude that the combination of omitted facts might for some reasonable police officers be insufficient to negate probable cause in these uncommon and specific circumstances.  Savage had been physically present at what looked by all appearances to be a typical drug deal:  he had witnessed a meeting in a convenience store, a brief drive with no destination, a conversation in a darkened automobile in a darkened

corner of a parking lot, and the presentation of what looked to be the drugs promised by the informant (who had been searched just before the "buy"). Having seen those occurrences firsthand, a reasonable officer in Savage's position could have concluded that the facts about the alias, tape recorder and weight of the substance would not negate probable cause and, thus, were not material. *See, e.g., United States v. Martin,* 920 F.2d 393, 398-99 (6th Cir.1990) (observation of controlled buy can overcome questions about informer's credibility).

No pre-April 1992 decisions from this court, Georgia's Supreme Court, or the United States Supreme Court involve facts that are much like the facts of this case. *See generally Courson v. McMillian,* 939 F.2d 1479, 1497-98 & n. 32 (11th Cir.1991) (law can be "clearly established" for qualified immunity purposes by decisions of U.S. Supreme Court, Eleventh Circuit Court of Appeals, or highest court of state where case arose); *D'Aguanno v. Gallagher,* 50 F.3d 877, 880 n. 5 (11th Cir.1995). Savage's conduct was not so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done what Savage did. *Lassiter,* 28 F.3d at 1149. Defendant Savage is due immunity.

III.

The governmental parties argued two other questions in briefs to this Court: the merits of the plaintiffs' constitutional claims and the liability of the local governments under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For these claims, we no longer have

jurisdiction in the light of the Supreme Court's decision in *Swint v. Chambers County Comm'n,* --- U.S. ----, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).

REVERSED in part and REMANDED.