United States Court of Appeals,

Eleventh Circuit.

No. 94-8454.

Johnny HEGGS, Husband of Delois Heggs, deceased;  James Reynolds,
Administrator of the Estate of Delois Heggs, Plaintiffs-Appellees,

v.

Hershal GRANT;  Wayne Fuqua, in his individual and official
capacity;  The City of Dublin, Georgia, Defendants-Appellants.

Jan. 22, 1996.

Appeal from the United States District Court for the Southern
District of Georgia. (No. 3:92-00032-CV), Dudley H. Bowen, Jr.,
Judge.

Before BIRCH and BARKETT, Circuit Judges, and HENDERSON, Senior
Circuit Judge.

PER CURIAM:

This is an appeal from the order of the United States District
Court for the Southern District of Georgia denying the appellants'
motion for summary judgment in an action filed pursuant to 42
U.S.C. § 1983.[1]  As we more fully explain below, our jurisdiction
is limited to deciding whether the appellants, Hershall Grant and
Wayne Fuqua, are entitled to qualified immunity from the assessment
of § 1983 damages.  We conclude that they are and therefore reverse
the district court's implicit ruling to the contrary.

I. BACKGROUND

The facts giving rise to this lawsuit are not in dispute.  On
February 1, 1992, Delois Heggs was arrested for public drunkenness
and disorderly conduct by T.J. Cobb, Jr., a police officer of the

---

[1]Section 1983 prohibits the deprivation under color of state
law of any rights, privileges, or immunities secured by the
Constitution and laws of the United States.

City of Dublin, Georgia ("City"). Cobb transported Heggs to the City jail for booking. According to the incident report prepared by Cobb and made a part of the record, Heggs was not unconscious, she displayed no signs of trauma, illness, drug or alcohol withdrawal and she denied being under the influence of any drug other than alcohol. Although Heggs was uncooperative in answering questions, Cobb was able to elicit her medical and drug use history. She denied having suicidal tendencies stating that she "loved" life and had never planned to kill herself in the past, nor would she in the future. However, when Cobb advised her he was going to place her in a cell, she threatened to take her life if he took such action. In accordance with standard operating procedures in place at the jail, Cobb reported Heggs' threat to Cassandra Hall, the jailer on duty, who in turn called the shift supervisor, Lieutenant Hershall Grant, to evaluate the situation. While waiting for Grant, Heggs informed Cobb that she was only joking about killing herself and stated that she was just "making it hard on him (Cobb)."

Grant had known Heggs for approximately fifteen years and had arrested her for public drunkenness on a number of occasions. She had never threatened or attempted suicide during any of her past incarcerations. When Grant arrived he asked Heggs whether her suicide threat was serious and suggested that he transport her to the hospital. She assured him there was no need for that and repeated that she had only been trying to make things difficult for Cobb. At that point Heggs telephoned her attorney, who apparently refused to render her immediate assistance, but agreed to come to

the jail later in the morning.[2] After receiving further assurances from Heggs that she was going to be all right and determining that her suicide threat was not a reality, Grant approved her placement in a cell.

In keeping with procedures affecting intoxicated inmates, the mattress, blanket and sheets were removed from Heggs' cell,[3] but she continued to wear her street clothing. It was also jail policy to conduct a check of all prisoners every fifteen minutes. The first check of Heggs occurred at 1:45 a.m. and was made by an officer who remained in the cell area until 2:08 a.m. Subsequent observations were conducted at 2:20 a.m., 2:34 a.m. and 2:42 a.m. Heggs spoke with the jailer during two of these visits and requested a blanket and mattress. At 2:57 a.m. Grant passed through the inmate area and discovered Heggs hanging from the cell bars by her socks. Attempts to revive her were unsuccessful.

Heggs' husband and the administrator of her estate subsequently instituted the present action seeking § 1983 damages against Grant in his individual capacity, the Chief of Police, Wayne Fuqua, in his individual and official capacities, and the City. The complaint alleged that Grant was deliberately indifferent to Heggs' medical needs, in violation of the Fourteenth Amendment, by failing to move her to a proper facility for psychiatric intervention after she threatened to commit suicide and

---

[2] The time of Heggs' arrest was 12:37 a.m.

[3] Grant explained in deposition testimony that intoxicated inmates sometimes try to hurt themselves or set fire to their cells and that the removal of these items was a preventative measure.

by leaving her unattended in a jail cell with the means to carry out the threat. It further alleged that Fuqua and the City were also liable under § 1983 because they were aware of the need for better staffing and training at the jail in the area of suicide prevention and failed to take adequate corrective measures.[4] The complaint also asserted pendent state law claims.

Thereafter, the defendants filed a joint motion for summary judgment supported by affidavits and deposition testimony, which outlined the facts as stated above. They argued they were entitled to judgment on the merits and that Grant and Fuqua were entitled to qualified immunity from the payment of damages in their individual capacities.[5] In response, the plaintiffs did not take issue with the defendants' statement of the facts, but submitted the affidavit of David E. Slemons, identified as a Criminal Justice Management Consultant, who opined that the circumstances demonstrated deliberate indifference to Heggs' medical needs and safety. The district court thereafter denied the motion for summary judgment stating simply that the plaintiffs had "met their burden ... of demonstrating genuine issues of material fact." (R1-38). The

---

[4]The record shows that in the year preceding Heggs' death, there were three successful suicides at the jail and two attempts.

[5]The qualified immunity defense does not extend to municipalities or to claims against state actors in their official capacities. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, ----, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517, 523 (1993); *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149 n. 2 (11th Cir.1994). The motion for summary judgment did not specifically address the plaintiffs' state causes of action. We note in passing, however, that the defense does not apply to suits governed by state law. *D'Aguanno v. Gallagher,* 50 F.3d 877, 879 (11th Cir.1995).

court did not identify the issues of fact for trial, nor did it address the subject of qualified immunity. The defendants later filed this appeal in which they challenge the district court's implicit denial of qualified immunity and its explicit denial of summary judgment on the merits.

## II. DISCUSSION

Because a final order has not been entered in this case, we are limited in the scope of our review. On the appeal of a nonfinal order denying qualified immunity, we have jurisdiction under the collateral order doctrine to decide whether the conduct complained of violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982); *see Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411, 427 (1985); *Haygood v. Johnson,* 70 F.3d 92, 94-95 (11th Cir.1995). This is purely a question of law, which we review *de novo. Elder v. Holloway,* 510 U.S. ----, ----, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344, 351 (1994). We do not have jurisdiction to decide sufficiency of the evidence issues going to the merits of the case. *Johnson v. Jones,* 515 U.S. 2151, ----, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238, 246-47 (1995). Thus, at this interlocutory stage, we may not review a district court's finding "that there exists a genuine issue of material fact regarding the conduct claimed to violate clearly established law." *Babb v. Lake City Community College,* 66 F.3d 270, 272 (11th Cir.1995).

Despite the district court's finding in the present case that

summary judgment was precluded due to the presence of genuine issues of fact, the parties are in full agreement that the events described herein accurately portray what happened at the jail after Heggs' arrest.[6]   We may review, therefore, whether clearly established law was violated under this "given set of facts." *Johnson,* 515 U.S. at ----, 115 S.Ct. at 2159, 132 L.Ed.2d at 250.

To recap, the undisputed facts are as follows:  Heggs, in an intoxicated state, threatened to kill herself.  She then retracted the threat and assured both Cobb and Grant that she was only joking and did not contemplate self-inflicted injury.  She also declined Grant's offer to take her to the hospital.  Grant, who had known Heggs for fifteen years and knew that she had never been suicidal on any other occasion, accepted her assurances, decided that the threat was not genuine and yielded to her refusal of hospitalization.  He then placed her in a cell from which the sheets, blanket and mattress had been removed, knowing that she would be checked every fifteen minutes.

The law is clearly established that jail officials may not act with deliberate indifference to the risk of inmate suicide. *Edwards v. Gilbert,* 867 F.2d 1271, 1274-75 (11th Cir.1989).  There can be no deliberate indifference to an inmate's safety, however,

---

[6]The district court did not find that a question of material fact precluded qualified immunity.  We construe its order as addressing the merits of the case only, an issue which is "conceptually distinct" from the question of qualified immunity. *See Johnson,* 515 U.S. at ----, 115 S.Ct. at 2157, 132 L.Ed.2d at 247-48.  Assuming that we have the discretion to exercise pendent appellate jurisdiction over the district court's denial of summary judgment on the merits, *see Swint v. Chambers County Comm'n,* 514 U.S. ----, ----, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60, 74-75 (1995), we decline to exercise it. *See Ratliff v. DeKalb County, Ga.,* 62 F.3d 338, 340 n. 4 (11th Cir.1995).

unless there was a "strong likelihood, rather than a mere possibility, that suicide would result from a defendant's actions or inaction." *Tittle v. Jefferson County Comm'n,* 10 F.3d 1535, 1540 (11th Cir.1994) (en banc) (internal quotation marks and citations omitted). Consequently, Grant is entitled to qualified immunity unless a reasonable officer in his position should have known under the circumstances then existing that Heggs would most likely harm herself if he did not take additional precautions to protect her. That is, "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in [Grant's] place, that "what he [did or did not do]' violate[d] federal law." *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987)).

We find that at the time of Heggs' suicide, the law did not (nor does it now) require Grant to do anything differently than what he did on this occasion. In fact, in a case decided just after Heggs' suicide, this court found no § 1983 liability under somewhat similar circumstances. In *Schmelz v. Monroe County,* 954 F.2d 1540 (11th Cir.1992), James Michael Schmelz was arrested by the Monroe County Sheriff's Department. He was well-known to the Department's members because of numerous prior arrests. Although Schmelz was normally combative, on this particular occasion he was quiet and subdued. He had never attempted suicide in the past and denied the wish to harm himself when questioned by the ranking officer on duty. The officer nevertheless thought it prudent to

put him on a "suicide watch." According to Department policy, this required that a guard be present in the jail area on a continuous basis and that Schmelz be visually observed every fifteen minutes. In between observations and during a brief absence of the officer assigned to the cell area, Schmelz attempted to hang himself with a blanket. He consequently sustained injuries which left him in an irreversible coma. *Id.* at 1541-42, 1545.

The court in that case stated that § 1983 liability cannot be founded upon the suicide of an inmate " "who never had threatened or attempted suicide and who had never been considered a suicide risk.' " *Id.* at 1545 (quoting *Edwards,* 867 F.2d at 1277). The court held that the ranking officer went beyond her duty by placing Schmelz on a suicide watch under the circumstances, and that leaving him alone and with a blanket was at most, negligence. *Id.*

In the instant case, although Heggs threatened to kill herself, she quickly and emphatically recanted the threat. She had spent the night in the jail while intoxicated many times in the past without incident. Grant knew her well and believed her assurances that she would be all right. Serving as additional insurance was the knowledge that her condition would be checked at fifteen-minute intervals. There is nothing in the record to demonstrate that Grant's evaluation of the situation was unreasonable. No clearly established law required him to take further measures to protect her. Likewise, no clearly established law required Fuqua to staff the jail or train his officers more thoroughly to prevent suicide under these circumstances. Through this lawsuit the plaintiffs, in effect, seek to establish a new

rule of law which would require jail officials to treat more seriously than is now required every suicide threat made by a prisoner, even those made in an offhand or joking manner. We simply observe that there was no such legal duty imposed at the time of Heggs' suicide requiring the custodial authorities to do more than what was done on this occasion. We therefore conclude that Grant and Fuqua are entitled to the qualified immunity defense from liability.

## III. CONCLUSION

Because clearly established law did not proscribe the actions or inaction of Grant and Fuqua, they are immune from an award of § 1983 damages in their individual capacities. We therefore REVERSE the district court's implicit finding to the contrary and REMAND the case for further proceedings on the plaintiffs' remaining claims.