John J. RIEBSAME, Plaintiff,

v.

Art Dion PRINCE, Brevard County Sheriff's Deputy, Individually; Phil Williams, Brevard County Sheriff, Individually; and Scott Ellis, Brevard County Clerk of Court, Individually; Defendants.

No. 6:01–cv–1093–Orl–31JGG.

United States District Court, M.D. Florida, Orlando Division.

May 9, 2003.

John J. Riebsame, Palm Bay, FL, Pro se.

D. Andrew DeBevoise, Christopher J. Steinhaus, DeBevoise & Poulton, P.A., Winter Park, FL, for Art Dion Prince and Phil Williams.

Richard E. Stadler, Stadler & Harris, P.A., Titusville, FL, for Scott Ellis.

## ORDER

PRESNELL, District Judge.

This cause comes for the Court's consideration on the Report and Recommendation by Magistrate James G. Glazebrook of March 6, 2003. (Doc. 103). On May 2, 2003, Plaintiff submitted Objections to the Report and Recommendation. (Doc. 109). On May 7, 2003, Defendants Art Dion Prince and Phil Williams submitted their Response to Plaintiff's Objections. (Doc. 110).

Upon *de novo* review of the record, Plaintiff's Objections, and Defendants' Response thereto, the Court confirms and adopts Magistrate Glazebrook's Report and Recommendation in its entirety.

It is therefore

**ORDERED AND ADJUDGED** that the Report and Recommendation of the Magistrate Judge (Doc. 103) is **CONFIRMED** and is hereby **ADOPTED**. In addition, the Court **GRANTS** Defendants Prince and Williams' Motion for Summary Judgment (Doc. 76) and **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 82).

REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following cross-motions for summary judgment:

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 76)

FILED: December 13, 2002

THEREON it is RECOMMENDED that the motion be GRANTED.

MOTION: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 82)

FILED: December 16, 2002

THEREON it is RECOMMENDED that the motion be DENIED.

## I. *THE ISSUES*

In his Fourth Amended Complaint [Docket No. 59], pro se plaintiff John J. Riebsame ["Riebsame"] seeks to hold Brevard County Sheriff Phil Williams ["Sheriff Williams"] and Deputy Sheriff Art Dion Prince ["Deputy Prince"] individually liable—and to collect from their family bank accounts more than $800,000 in damages—for an event of Riebsame's own making. As a result of Riebsame's own juvenile and irresponsible conduct over several years,[1] Riebsame was properly arrested and detained on July 16, 1999. Riebsame had violated an injunction issued by the Circuit Court of Brevard County to protect Bryan Keith from Riebsame because of Riebsame's repeat violence against Keith. Docket No. 76, Exhibit B. The Brevard County Sheriff and his deputies have been given the dangerous and difficult task of enforcing such injunctions, and the law of qualified immunity protects Sheriff Williams and Deputy Prince from Riebsame's suit for damages.

Deputy Prince and Sheriff Williams have moved for summary judgment on all of Riebsame's claims on the ground that, as law enforcement officers, they have qualified immunity from suit. Docket No. 76 at 2, 15—17. Deputy Prince and Sheriff Williams also seek summary judgment on the ground that they never violated Riebsame's rights; on the ground that they acted in good faith based on probable cause to believe that Riebsame was violating the injunction; and on the ground that Riebsame has offered no evidence that the violations he claims were caused by an official policy or custom of the Brevard County Sheriff. Docket No. 76 at 2, 8—15. In his cross-motion for summary judgment, Riebsame seeks judgment as a matter of law on all claims in the Fourth Amended Complaint. Riebsame alleges that the orders, minutes, affidavits, police reports, admissions, and depositions show that there are no material issues of fact for trial, and that Deputy Prince and Sheriff Williams are liable to Riebsame as a matter of law. Docket No. 82. The Court should grant the motion for summary judgment filed by Deputy Prince and Sheriff Williams on the ground that they have qualified immunity from suit, and deny Riebsame's cross-motion for summary judgment.

## II. *THE LAW*

### A. *Standard of Review on Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

---

1. As described in the application section below, for several years Riebsame has engaged in a minor war with the·owners of competing truck services, including Bryan Thomas Keith ["Keith"] and Timothy Milsaps ["Milsaps"].

al fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593–94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits, and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant, and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reason-

ableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

**B.** *Material Submitted in Opposition to Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that the party making a motion for summary judgment may submit affidavits to support its argument as to the

absence of a genuine issue of material fact. Rule 56(e) provides as follows regarding the materials that the non-movant must submit in response:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant. *LaChance v. Duffy's Draft House,* 146 F.3d 832, 834 (11th Cir.1998), *citing Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505. A reviewing court generally cannot consider inadmissible hearsay evidence in opposition to a summary judgment motion. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999). In considering a motion for summary judgment, a reviewing court must consider all the proffered evidence and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett–Murray Corporation v. Bone,* 622 F.2d 887, 893 (5th Cir.1980). However, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir.1984).

### C. *Qualified Immunity*

■ Qualified immunity is a question of law for the courts, even when asserted on summary judgment. *Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1557 (11th Cir. 1993) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). To defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a factfinder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's actions. *Id.* Qualified immunity does not extend to municipalities or to claims against state actors in their official capacities. *Heggs v. Grant,* 73 F.3d 317, 320 n. 5 (11th Cir.1996) (citations omitted). Also, the qualified immunity defense does not apply to lawsuits governed by state law. *Id.*

■ Qualified immunity protects police officers and sheriffs from suits against them in their individual capacity. *See Riley v. Newton,* 94 F.3d 632, 637 (11th Cir.1996); *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991). Qualified immunity shields government officials performing discretionary functions from civil liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). As stated in *Malley,* qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law." 475 U.S. 335 at 341, 106 S.Ct. 1092.

 The standard is whether the conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Rogers v. Miller,* 57 F.3d 986, 988 (11th Cir.1995). For purposes of qualified immunity, clearly established law can be determined only by the decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the highest court of the state where the case arose. *Jenkins by Hall v. Tallagdega City Bd. of Educ.,* 115 F.3d 821, 826 n. 4 (11th Cir.1997). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. *See Anderson,* 483 U.S. at 639, 107 S.Ct. 3034. Simply stated, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *See Williamson v. Mills,* 65 F.3d 155, 157 (11th Cir.1995); *see also Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc).

 A plaintiff cannot rely on "general, conclusory allegations" or "broad legal truisms" to show that a right is clearly established. *See Kelly v. Curtis,* 21 F.3d 1544, 1550 (11th Cir.1994); *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993). Rather, the plaintiff must show that when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful.

*See Kelly,* 21 F.3d at 1550; *accord, Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

 Qualified immunity protects even reasonable but mistaken conduct, and requires that the unlawfulness of the official's conduct be apparent so that government officials can anticipate when their conduct may give rise to damages. *See Anderson,* 483 U.S. at 640—41, 646, 107 S.Ct. 3034. Arresting officers are entitled to qualified immunity where there is *arguable* probable cause. *See Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990) (emphasis added). It is inevitable that law enforcement officials "will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable." *See Anderson,* 483 U.S. at 641, 107 S.Ct. 3034. When an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled to effectuate a full custodial arrest. *Lee v. Ferraro,* 284 F.3d 1188, 1196 (11th Cir.2002) (citing *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)).

 While the official who asserts the defense of qualified immunity has the burden of establishing that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred, if the official meets this burden, then the plaintiff must demonstrate that the official violated clearly established law measured under an objective standard of which a reasonable person would have known. *See Montoute v. Carr,* 114 F.3d 181 (11th Cir.1997); *Powell v. Georgia Department of Human Resources,* 114 F.3d 1074 (11th Cir.1997); *Pickens v. Hollowell,* 59 F.3d 1203, 1205 (11th Cir.1995); *Hartsfield v. Lemacks,* 50 F.3d 950, 953 (11th Cir.1995).

## D. *Claims Against a Municipal Defendant Under 42 U.S.C. § 1983*

 In order to determine the capacity in which a defendant has been sued (individual or official capacity), the Court looks to the complaint and to the course of the proceedings. *Colvin v. McDougall,* 62 F.3d 1316 (11th Cir.1995). A lawsuit against a governmental official in his official capacity is deemed a suit against the municipality or entity that employs him. *Brown v. Neumann,* 188 F.3d 1289, 1290 (11th Cir.1999).

 A plaintiff may bring a claim under § 1983 against a municipal defendant for deprivation of a federal right pursuant to an official policy, practice, or custom. *Villanueva v. City of Ft. Pierce, FL,* 24 F.Supp.2d 1364, 1368 (S.D.Fla.1998); *see also Monell v. Department of Social Services,* 436 U.S. 658, 690—91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Circa Ltd. v. City of Miami,* 79 F.3d 1057, 1060 (11th Cir.1996). However, a plaintiff must do more than simply allege that such an official policy exists. He must prove a course of action that was "consciously chosen" or "officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion); *Villanueva,* 24 F.Supp.2d at 1368.

 The law recognizes no respondeat superior liability under § 1983. A plaintiff may pursue a § 1983 cause of action against a municipality for the actions of an officer only to the extent that the violations result from official custom or policy. *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. A municipal officer's actions may be attributed to official policy only where the local official is a "decisionmaker [who] possesses final authority to establish municipal policy." *Pembaur,* 475 U.S. at 481, 106 S.Ct. 1292. That an official has discretion in the exercise of a particular function does not in itself give rise to municipal liability—the official must actually be a "final policymaker." 475 U.S. at 481–82, 106 S.Ct. 1292. For example, a county official may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292.

 Whether a local official is a "final policymaker" is a question of state law for the district court to determine. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion); *accord, Owens v. Fulton County,* 877 F.2d 947, 950 (11th Cir.1989). In assessing whether an official is a final policymaker, the courts look in part to whether the official is vested with finality of authority in his decisions. *See Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915; *McMillian v. Johnson,* 88 F.3d 1573, 1579 (11th Cir.1996). It is well-settled that a municipal official is not a final policymaker if his decisions are subject to meaningful review. *See Morro v. City of Birmingham,* 117 F.3d 508, 510 (11th Cir. 1997) (police chief not a final policymaker because his decision was subject to review); *Scala v. City of Winter Park,* 116 F.3d 1396, 1401 (11th Cir.1997) (city manager not a final policymaker because his decision was subject to "meaningful administrative review"); *Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir.1996) (city police chief was not a final policymaker because his employment decisions could be reversed by the city manager); *Martinez v. City of Opa–Locka,* 971 F.2d 708, 713–15 (11th Cir.1992).

## III. *APPLICATION*

### A. *The Facts*

Riebsame owned a tractor-trailer servicing business in Brevard County. For

many years, Riebsame engaged in a minor war with the owners of competing truck services, including Bryan Thomas Keith ["Keith"] and Timothy Milsaps ["Milsaps"]. By way of example, Riebsame alleged in this case that Milsaps had conspired with others to ruin Riebsame's life professionally and personally; had solicited to commit arson of Riebsame's home; had conspired to "set up" Riebsame for false arrest; had stolen and vandalized Riebsame's property and vehicles; had threatened Riebsame's life; had made false statements about Riebsame's business and personal reputation; had consorted with law enforcement for malicious purposes; had made anonymous false complaints to H.R.S. that Riebsame had raped his girlfriend's four-year-old daughter; had made false complaints to Florida Marine Patrol that Riebsame had buried toxic chemicals at his home; and had stalked Riebsame. Fourth Amended Complaint, Docket No. 59 at ¶¶ 64 (verified by Riebsame). Riebsame later settled and voluntarily dismissed his claim against Milsaps. Docket Nos. 73, 102.

To perpetuate the war, Riebsame distributed a flyer to Keith's truck service customers warning them to stay away from Keith and Keith's Southern Tire Service.[2] In the flyer, Riebsame accused Keith of being a pathological liar who needs psychological help; of having had extra-marital affairs and paying child support for an illegitimate child; of overcharging customers; of stalking and harassing a Speedway store clerk named Vicky, attempting to get her fired, slandering her on the CB radio at night, keying her car, and following her home; of being

under investigation by the Florida Highway Patrol for soliciting, overcharging, and paying kickbacks to rest area employees; and of disposing of 55 gallon drums of oil, gas, diesel and anti-freeze on his mother's property. Docket No. 4, Exhibit A.

On July 13, 1999, Keith obtained a first amended[3] final permanent injunction for protection against Riebsame in the Circuit Court of Brevard County, Florida. Docket No. 76, Exhibit B. The Circuit Court based the order for protection on a finding that Keith had been a victim of repeat violence by Riebsame. Docket No. 76, Exhibit B, at 1, 2, 3; Docket No. 94 at 11. The injunction against Riebsame included the following provisions:

> Any violation of this Injunction shall be subject to Civil or Criminal remedies, including the imposition of a fine or imprisonment. A person who violates this Injunction for Protection *MAY BE CHARGED WITH A CRIME PUNISHABLE BY A FINE, JAIL, OR BOTH* ... Any violation of this Injunction should be reported to the appropriate law enforcement agency.
>
> * * * * * *
>
> [Riebsame] shall not commit, or cause any other person to commit, any acts of repeat violence against [Keith].... Repeat violence includes: assault, battery, sexual battery, or stalking.... Unless otherwise provided herein, [Riebsame] shall have no contact with [Keith]. [Riebsame] shall not directly or indirectly contact [Keith] in person, by mail, e-

---

2. When asked why he distributed the flyer, Riebsame stated that he "distributed the flyer for several reasons. Everything in the flyer was true. And there was a dislike between me and Mr. Keith. I mean, there was no love lost there. And he had been agitating me. And I did this in some respects as a re-

sponse." Docket No. 78 at 15 (Riebsame's deposition).

3. This was not the first repeat violence injunction that Keith had obtained to protect him from Riebsame. Keith had obtained an earlier injunction on May 26, 1999. Docket No. 76, Exhibit A.

mail, fax, telephone, through another person, or in any other manner.

\* \* \* \* \* \*

[RIEBSAME] SHALL NOT THREATEN [KEITH] ...WITH BODILY HARM; SHALL NOT STALK OR FOLLOW [KEITH]; SHALL NOT LINGER NEAR WHERE [KEITH] MAY RESIDE OR WORK; ... SHALL NOT CONFRONT [KEITH] IN PUBLIC; OR OTHERWISE DO ANY ACT CALCULATED TO FRIGHTEN [KEITH] ... [Riebsame] shall not have any oral, written, telephone, computer, or other communication with [Keith].

Docket No. 76, Exhibit B (all emphasis in original injunction).

The tenth page of the ten-page injunction is captioned "DIRECTIONS TO LAW ENFORCEMENT OFFICER IN ENFORCING THIS INJUNCTION." That portion of the injunction provides, in pertinent part, that:

Law enforcement officers of the jurisdiction in which a violation of this injunction occurs shall enforce the provisions of this injunction and are authorized to arrest for any violation of its provisions which constitutes a criminal act under section 741.31 or section 7784.047, Florida Statutes.... Should any Florida Law Enforcement Officer having jurisdiction have probable cause to believe that [Riebsame] has knowingly violated this injunction, the officer may arrest [Riebsame], confine him / her in the county jail without bail ... THIS INJUNCTION IS ENFORCEABLE IN ALL COUNTIES OF FLORIDA AND LAW ENFORCEMENT OFFICERS MAY EFFECT ARRESTS PURSUANT TO SECTION 901.15(6), FLORIDA STATUTES.

\* \* \* \* \* \*

REPEAT VIOLENCE: A Law Enforcement Officer acting in good faith under Section 784.046, F.S., and the officer's employing agency shall be immune from all liability, civil or criminal, that might otherwise be incurred or imposed by reason of the officer's or agency's actions in carrying out the provisions of Section 784.046, F.S.

Docket No. 76, Exhibit B (all emphasis in original).

Despite their complex and dysfunctional history of hatred, retribution, and court injunctions, Riebsame continued to voluntarily associate with Keith's employees, Noah Adkins and Timothy Milsaps, on the date of his arrest.[4] On the morning of July 16, 1999, Riebsame went to a Waffle House restaurant in Cocoa, Florida in order to meet Adkins so that Adkins could "oversee a bet" between Riebsame and a third party. Docket No. 94 at 11. The bet involved whether that third party could pass a polygraph test. *Id.* Keith, Milsaps, and Adkins were sitting together in the Waffle House. Riebsame entered the restaurant and noticed Adkins. Upon entering the restaurant, Riebsame raised his hand toward Adkins with all four fingers closed and his thumb out. *Id.*

Seeing Riebsame enter the restaurant and raise his fist, Keith called 911 from the Waffle House restaurant. Deputy Prince and Deputy Jerry Patterson ["Patterson"] responded to the call approximately fifteen minutes after Riebsame's arrival. Docket No. 94 at 11. Deputy Patterson spoke with Keith and Adkins, who confirmed that Riebsame had raised his fist and had looked in their direction. *Id.* Deputy

---

**4.** Riebsame once had obtained an injunction for protection against Milsaps in 1996. Docket No. 59, Exhibit C. Milsaps is a former employee of Riebsame. Docket No. 87 at 5. On the date of Riebsame's arrest, Adkins and Milsaps were Keith's employees. *Id.* at 8.

Prince contacted the Warrants Division of the Brevard County Sheriff's Office, and verified that Keith had an active injunction protecting him from Riebsame. *Id.* As described in greater detail above, the injunction prohibited Riebsame from having any direct or indirect contact with Keith in any manner. Docket No. 76, Exhibit B. Deputy Patterson arrested Riebsame and charged him with violating Fla. Stat. § 784.047 (Violation of Injunction).[5] *Id.*

After his arrest, Riebsame was handcuffed and placed in the patrol car. Docket No. 78 at 46. Because the handcuffs were uncomfortable behind him, the deputies agreed to move them to his front. *Id.* Deputy Prince put Riebsame in the back of the patrol car and rolled up the windows. *Id.* Riebsame asked that Deputy Prince leave the windows rolled down, but Deputy Prince told him that the procedure required that the windows be up. *Id.* Riebsame estimated that he was in the patrol car for thirty to forty minutes. *Id.* at 49. Riebsame claimed that he suffered "a little dehydration," but that he felt "a little better" after getting a drink of water at the jail. *Id.*

## B. *Individual vs. Official Capacity*

In the caption of the Fourth Amended Complaint and throughout its text, Riebsame clearly states that he is suing Deputy Prince and Sheriff Williams "individually." In other words, Riebsame seeks to recover more than $800,000 in damages out of the defendants' personal assets. The Court applies the qualified immunity analysis to those individual claims.

But Riebsame is a pro se litigant. Although he has not expressly sued Brevard County or the Brevard County Sheriff or his deputy in their "official capacities," Riebsame has used language that may be interpreted as attempting to assert such a claim.[6] For example, Riebsame scatters throughout the Fourth Amended Complaint references to "an invidious policy or custom" of wrongdoings; a "custom or policy" of dismissing Riebsame's complaints; citations to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir.1989) relating to municipal liability through official policy or custom; and a charge that Sheriff Williams was acting "pursuant to official policy or custom." Docket No. 59, *passim.* Although the qualified immunity issue disposes of all individual claims, this report and recommendation assumes that Riebsame also attempts to proceed on an "official capacity" claim.

## C. *Qualified Immunity*

Riebsame claims that Deputy Prince violated his federal civil rights under 42 U.S.C. § 1983 due to false and unlawful arrest, and due to deliberate indifference to an unsafe condition of confinement. Riebsame also claims that Sheriff Williams failed to disclose exculpatory evidence, and inadequately trained, supervised, and instructed his deputies. Riebsame also asserts a state-law claim for intentional infliction of emotional distress against Deputy Prince. Fourth Amended Complaint, Docket No. 59.

Deputy Prince and Sheriff Williams are entitled to qualified immunity. Both law enforcement officers acted within the scope of their discretionary au-

---

**5.** Riebsame did not include Deputy Patterson as a defendant in this lawsuit. In deposing Deputy Patterson, Riebsame told him that "I didn't name you in this case, because I believe you're an honest man who has been put in the middle here." Docket No. 80 at 4.

**6.** In previous complaints, Riebsame sued Sheriff Williams in his official capacity as Sheriff of Brevard County as well as individually.

thority with regard to the events and circumstances outlined in Riebsame's complaint. Deputy Prince responded to Keith's 911 call for assistance, questioned witnesses, arrested Riebsame, and escorted Riebsame to the car and then to jail. These activities are within the scope Deputy Prince's discretionary authority as a deputy sheriff. Indeed, the injunction itself expressly authorized arrest and detention. Docket No. 76, Exhibit B.

■ Sheriff Williams supervised the investigations into Riebsame's multiple complaints (placed by telephone and letter), and oversaw the training, supervision, and instruction of Deputy Prince. These activities were within the scope of Sheriff Williams' discretionary authority as Sheriff of Brevard County. Because the defendants' actions were within their discretionary authority, it is the plaintiff's burden to show that their actions violated clearly established statutory or constitutional rights of which a reasonable official would have known. Riebsame has not met this burden.

### 1. Individual Claims Against Deputy Prince (Counts I, III, and V)

#### a. Count I—False Arrest/False Imprisonment

■ Riebsame alleges that Deputy Prince violated his Fourth and Fourteenth amendment rights by arresting him and detaining him without probable cause. Docket No. 59, ¶ 33. Riebsame argues that "no reasonable and cautious deputy from the facts known at the scene could reasonably surmise that plaintiff violated any law." Docket No. 59, ¶ 34. Riebsame is wrong.

A deputy has probable cause to arrest someone who, contrary to an injunction, has had contact with and has publicly confronted a protected person. Keith's injunction against Riebsame prohibited Riebsame from having any direct or indirect

contact with Keith. Docket No. 76, Exhibit B. Deputy Prince responded to a 911 call for help, and arrived at the restaurant to find both Keith and Riebsame present. Docket No. 94 at 11. Deputy Prince confirmed the validity of the injunction with the Warrants Division before arresting Riebsame. Docket No. 94 at 11. Witnesses stated that Riebsame had made a hand or fist gesture in Keith's direction upon entering the restaurant. *Id.* Deputy Prince had not only *arguable* probable cause to arrest Riebsame, but also actual probable cause. No genuine issue of material remains as to whether Deputy Prince's conduct in arresting Riebsame violated a clearly established constitutional or statutory right.

Riebsame argues that material issues of fact remain regarding Riebsame's hand gesture when he entered the Waffle House, including whether the hand signal could have been construed as threatening, who saw the hand signal, who reported the hand signal to Deputy Patterson, why Deputy Patterson indicated on his report that the hand signal consisted of a fist. These issues do not raise a material issue of fact as to whether Deputy Prince had arguable probable cause to make the arrest. Arguable probable cause existed to arrest Riebsame because Riebsame was found in the same restaurant as Keith in violation of an active injunction protecting Keith.

Riebsame also argues that Deputy Prince did not have probable cause to arrest him because he had not been served with the injunction, and therefore, the injunction was not valid. No genuine issue of material fact remains as to this issue. Deputy Prince had probable cause to arrest Riebsame even if Riebsame was unaware of the injunction. Deputy Prince reasonably believed the injunction to be valid and active based on his phone call to the Warrants Division.

Finally, Riebsame believes that Prince arrested him because he did not like him. Docket No. 86 at 4. Riebsame cites many facts which he believes demonstrate Deputy Prince's alleged "distaste" for Riebsame. None of these issues of fact are material. The circumstances of his arrest demonstrate that arguable probable cause existed for the arrest.

### b. Count III—Cruel and Unusual Punishment

■ Riebsame's claim for cruel and unusual punishment in violation of the Eighth Amendment is based entirely upon facts that occurred while he was a pretrial detainee. Incidents regarding pretrial detainment are covered by the Fourteenth Amendment. *See Lancaster v. Monroe County, AL,* 116 F.3d 1419, 1425 n. 6 (11th Cir.1997). Therefore, the plaintiff's claim in Count III will be treated as a claim for violation of due process under the Fourteenth Amendment.

■ Deputy Prince is entitled to qualified immunity from Count III of Riebsame's complaint. Riebsame has not shown that Deputy Prince violated any clearly-established constitutional or statutory law. Riebsame's claim in Count III ("cruel and unusual punishment" interpreted as a violation of due process under the Fourteenth Amendment) is that Riebsame was left in the patrol car on a hot day with the windows rolled up for an undetermined amount of time estimated at 30—40 minutes.[7] Docket No. 59, ¶ 46; Docket No. 78 at 48. As a result of being left in the car with the windows up, Riebsame claimed that he suffered "a little dehydration," but that he was cured when he had a drink of water at the jail. Docket No. 78 at 46. Riebsame has cited no established consti-

tutional or statutory right to have the windows rolled down while waiting in a patrol car. Plaintiff has offered no evidence to meet his burden of proving that no reasonable deputy, who was aware of all clearly established rights, would have acted similarly under the circumstances.

### c. Intentional Infliction of Emotional Distress (Count V)

■ Summary judgment should be granted in favor of Deputy Prince as to Riebsame's state-law claim of intentional infliction of emotional distress. Riebsame has not produced any evidence that supports this claim. A claim for intentional infliction of emotional distress requires a plaintiff to show (1) that the defendant engaged in conduct that was intentional or reckless, that is, that he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, going beyond all bounds of decency and is to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277 (1985). There is no evidence that Deputy Prince's actions were intentional; no evidence that his actions were outrageous, odious, or utterly intolerable in a civilized community; and no evidence that Riebsame suffered severe emotional distress. There is no genuine issue of material fact with regard to this claim, and summary judgment should be granted in favor of Deputy Prince.

### 2. Individual Claims Against Sheriff Williams (Counts II and IV)

As defendants correctly state in their motion for summary judgment, there is no

---

7. There is an issue of fact as to whether Riebsame was left in the car alone for the entire time or whether one of the deputies was with him. This fact is immaterial, how-ever, because the deputies did not violate any established constitutional right in either instance.

cause of action for "Failure to Make Known Exculpatory Evidence." Docket No. 76 at 9. Riebsame alleges that "Williams is libel [sic] to Plaintiff for continuing the criminal charges and a criminal investigation against Plaintiff." Docket No. 59, ¶ 38. Defendants properly address Count II of Riebsame's complaint as if it were a claim for malicious prosecution. Although not clear, the complaint appears to allege that Sheriff Williams was aware of alleged wrongdoing in his department and failed to prevent "the commission of said wrongs" resulting in Riebsame's alleged false arrest and imprisonment. *Id.* at ¶ 51—52. In Count IV, Riebsame alleges that Sheriff Williams deprived him of his constitutional rights by failing to properly train Deputy Prince and other deputies. *Id.* at ¶ 51.

To the extent that Riebsame is suing Sheriff Williams individually, Sheriff Williams is entitled to qualified immunity as to Counts II and IV. No issue of material fact remains with regard to Sheriff Williams' qualified immunity. The actions (or inactions) that Riebsame cites in his complaint are all clearly within the scope of Sheriff Williams' discretionary authority as Sheriff of Brevard County. None of these actions violate any clearly-established constitutional or statutory right, and no reasonable person could find that Sheriff Williams' actions were not justified.

■■■ As to the allegation of malicious prosecution, there is evidence that more than one investigation was carried out in response to Riebsame's complaints, and there is no proof that these investigations were in any way inadequate. Docket No. 86, Exhibit 13. As to allegation of failure to train the deputies, Riebsame has not produced any evidence regarding the training of deputies. Moreover, there is

no evidence that the deputies' actions were even illegal. Riebsame has not proved that Sheriff Williams violated any clearly-established constitutional or statutory right. No genuine issue of material fact remains as to Sheriff Williams' qualified immunity.

### D. *Municipal Liability*

To the extent that Riebsame intended to sue Sheriff Williams in his official capacity as Brevard County Sheriff under 42 U.S.C. § 1983, Riebsame presented no legally sufficient evidence to show that Sheriff Williams maintained a custom or policy which caused Riebsame's constitutional rights to be violated. There is no remaining issue of material fact for trial as to Riebsame's claims against Sheriff Williams in his official capacity, and summary judgment should be granted in Sheriff Williams' favor.

■■■ To maintain a § 1983 claim against Sheriff Williams in his official capacity, Riebsame must show that Sheriff Williams consciously chose or officially sanctioned or ordered an official policy, practice, or custom that deprived Riebsame of a federal right. Riebsame has submitted no evidence that supports the finding of such a policy, practice or custom. Riebsame argues that Sheriff Williams' maintained a custom or policy of "dismissing Plaintiffs [sic] Complaints as vexatious and eccentric or otherwise discounting Plaintiffs complaints where acts of Deputy malfeasants violated Plaintiffs clearly established Constitutional rights." Docket No. 59, ¶ 14. However, Riebsame admits in the complaint that Sheriff Williams assigned Sergeant Susan Johnson to investigate his complaints. *Id.* Furthermore, Inspector Robert Carrasquillo of Internal Review continued the investigation, and issued a memorandum to Major J. Donn of Professional Standards concluding that because Riebsame failed to cooperate

in the investigation, the complaint was closed. Docket No. 86, Exhibit 13. There is no evidence whatsoever that Sheriff Williams or any of his subordinates violated any of Riebsame's rights, or maintained a custom or policy of doing so.

Similarly, there is no evidence whatsoever that Sheriff Williams failed to train Deputy Prince or other deputies. Riebsame alleges that Deputy Prince and other deputies engaged in malicious prosecution, unlawful arrest and imprisonment, conspiracy to violate Riebsame's constitutional rights, and "concealing malfeasants or misfeasants by Deputies" all as a result of Sheriff Williams' failure to train. Docket No. 59, ¶ 51. Riebsame has shown no evidence of such a policy or custom of training or failing to train deputies. No issue of material fact remains with regard to Riebsame's claims against Sheriff Williams in his official capacity as Sheriff of Brevard County.

## IV. *CONCLUSION*

Accordingly, it is **RECOMMENDED** that the Motion for Summary Judgment of Deputy Prince and Sheriff Williams [Docket No. 76] be **GRANTED.** It is

**FURTHER RECOMMENDED** that Riebsame's Motion for Summary Judgment [Docket No. 82] be **DENIED.**

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Dated: March 6, 2003.